IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCHERING-PLOUGH HEALTHCARE PRODUCTS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )  Civ. No. 09-642-SLR<br>)<br>NEUTROGENA CORPORATION, )<br>)<br>Defendant. ) | |

**MEMORANDUM ORDER**

At Wilmington this 18th day of May 2010, having reviewed plaintiff's motion for partial summary judgment as to liability for false advertising against defendant (D.I. 4) and the papers submitted in connection therewith,

IT IS ORDERED that plaintiff's motion is granted, as follows:

1. **Background**. This action was filed on August 27, 2009, alleging that defendant has promulgated false advertising in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125, and the Uniform Deceptive Trade Practices Act, 6 Del. C. § 2351 et seq. (D.I. 1) These parties previously maintained a section 43(a)(1)(B) action in this court regarding each other's sunscreen advertisements. (Civ. No. 09-268-SLR) The specific advertising at issue in this litigation concerns defendant's new "Ultra Sheer Dry-Touch Sunblock SPF 100+" sunscreen (hereinafter, the "100+ Product"). Plaintiff contends that advertising on the 100+ Product's packaging, as well as print advertising

featuring the 100+ Product, falsely claim that the 100+ Product contains "Helioplex®" – a photostabilizing agent proprietary to defendant – when it does not. The motion at bar was filed shortly after the complaint in this action.

      2. **"Helioplex®" and contested advertisements**. Defendant's expert, Dr. Yohini Appa, previously submitted a declaration to this court stating that

> [i]n 2000, Neutrogena scientists discovered that combining avobenzone with diethylhexyl 2,6-naphthalate [("DEHN")] and oxybenzone prevented avobenzone from breaking down when exposed to sunlight. This novel method was granted a United States patent in 2002, and is the photostable technology known as Helioplex®.

(D.I. 5, ex. C at ¶ 10)[1] Defendant echoed the same statements in its counterclaim in the previous action. (*Id.*, ex. D at 5) The court adopted this definition in its prior opinion, stating that "'Helioplex®' is defendant's trademark on its patented formulation of avobenzone with [DEHN] and oxybenzone." (Civ. No. 09-268, D.I. 114 at 2-3) As plaintiff points out, in section 43(a) litigation against Loreal, Inc. pending before the United States District Court for the Southern District of New York, defendant made the same claim regarding the ingredients contained in "Helioplex®." (*Id.*, ex. E at ¶ 13) Defendant's advertising for "Helioplex®" similarly claims that "[a]bsorbed energy from UV light is transferred from avobenzone to DEHN (a stabilizer) and oxybenzone," which "stabilization prevents bond breakage, allowing avobenzone to continue providing high UVA protection."[2] (*Id.*, ex. F)

---

      [1]Unless specifically noted, the docket item numbers referenced by the court refer to Civ. No. 09-648. Several documents from the prior litigation between these parties (Civ. No. 09-268) have been docketed in this action as exhibits to plaintiff's motion.

      [2]Although an "Ultra Sheer Dry-Touch Sunblock" is pictured in this advertisement, it is not clear that it is the SPF 100+ variety, and plaintiff does not so argue.

3. Plaintiff provides the court with several advertisements that it asserts are literally false. The first is a television commercial (provided in screenshot format) in which defendant states that it "created Ultra Sheer with Helioplex® for the highest combined UVA/UVB protection." (*Id.*, ex. A) The commercial features a close-up of the 100+ Product bottle, which prominently displays the "with Helioplex® broad spectrum uva•uvb protection" logo across the front. (*Id.*, ex. A & ex. G (bottle photograph)) Defendant's print advertisement, entitled "Best in sun protection," prominently displays as a subheading the text "Ultra Sheer SPF 100+ with Helioplex® offers the highest combined UVA/UVB protection," and subsequently references the 100+ Product in connection with "Helioplex®" in the ad's comparative chart and several times (in bold font) in the ad's text. (*Id.*, ex. B)

4. Plaintiff seeks partial summary judgment that these advertisements are literally false. In lieu of a response, the court ordered defendant to respond to several direct questions relevant to the court's inquiry. (D.I. 7) In its response, defendant indicated that: (1) "Helioplex®" need not, by definition, contain DEHN; (2) DEHN was absent from the 100+ Product until February 2010; and (3) even should the court find literal falsity, plaintiff must also demonstrate "materiality, actual deception or a tendency to deceive, and a likelihood of injury." (D.I. 9 at 6) As discussed *infra*, the court disagrees with this assessment.

5. Defendant has since clarified that DEHN has been added to the 100+ Product formulation; DEHN was absent from the 100+ Product "from April through August 2009, and in product shipped . . . through early April 2010;" and that it would be expected that these bottles "would be gradually sold off at retail outlets over time." (D.I. 14)

3

6. **Standards**. A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

7. Section 43(a) of the Lanham Act provides that

> a person who shall . . . use in connection with any goods or services . . . any false description or representation, including words or other symbols tending falsely to describe or represent the same . . . shall be liable in a civil action by any person . . . who believes that he is or is likely to be damaged by the use of such false description or representation.

15 U.S.C. § 1125(a). There are two different theories of recovery for false advertising under section 43(a): "(1) an advertisement may be false on its face; or (2) the advertisement may be literally true, but given the merchandising context, it nevertheless is likely to mislead and confuse consumers." *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993). The test for literal falsity is an objective one for the court's determination. "[I]f a defendant's claim is untrue, it must be deemed literally false" regardless of the advertisement's impact on the buying public. *Id.* at 943-44. Further, "only an unambiguous message can be literally false," and "[a] literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Novartis Consumer Health Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586-87 (3d Cir. 2002) (quoting *Clorox Co. v. Procter & Gamble Commercial Co.*, 228 F.3d 34, 35 (1st Cir. 2000)) (internal quotations omitted). "The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, [ ] the less likely it is that a finding of literal falsity will be supported." *Id.* at 587 (internal quotations and citations omitted). "When the challenged advertisement is implicitly rather than explicitly false, its tendency to violate the Lanham Act by misleading,

5

confusing or deceiving should be tested by public reaction." *Castrol*, 987 F.2d. at 943.

8. **Discussion**. There is no dispute that the 100+ Product, for a certain period of time, did not contain DEHN; octocrylene was used in its place.[3] (*Id.*, ex. G (ingredients); D.I. 9 at 3; D.I. 14) Defendant now argues that the "'Helioplex®' [technology] is sufficiently elastic to encompass avobenzone and oxybenzone combined with octocrylene when DEHN is not used, provided that the product also offers the same high levels of UVA and UVB protection and photostability." (D.I. 9 at 3) The court disagrees. Defendant expressly defined Helioplex® to the consuming public. (D.I. 5, ex. F ("Absorbed energy from UV light is transferred from avobenzone to DEHN (a stabilizer) and oxybenzone," which "stabilization prevents bond breakage, allowing avobenzone to continue providing high UVA protection.").[4] Defendant has not indicated that it subsequently provided the public a contrary or expanded representation and, therefore, the public has no basis on which to perceive the "flexibility" in the formula advocated by defendant.

9. Defendant's message is unambiguous and explicit, insofar as it provided the

---

[3]Plaintiff states that it does not presently have any evidence to dispute defendant's representation that it added DEHN to the 100+ Product in February 2010. (D.I. 16) Defendant's submission of the 100+ Product current labeling indicates that DEHN is now listed amongst the inactive ingredients. (D.I. 14, ex. A) The court's holding does not hinge on a particular incorporation date. These facts may be fleshed out during damages discovery.

[4]Pursuant to Federal Rules of Evidence 201(b) and (c), the court takes judicial notice of the fact that defendant's Helioplex® registration with the United States Patent and Trademark Office specifies the "goods and services" associated with defendant's mark are "**Ingredients** which provide sunscreen protection, sold as an **integral component** of sun protection preparations[.]" (Reg. No. 3263284, July 10, 2007) (emphasis added)

public with a specific formula for Helioplex®, and its labeling and advertisements for DEHN-free 100+ Product clearly represented that Helioplex® was present. *Novartis*, 290 F.3d at 586-87. In the absence of Helioplex®, defendant's labeling and advertisements were literally false. *Id.* As such, plaintiff need not provide evidence of consumer confusion; such confusion is presumed. *See Castrol*, 987 F.2d at 943 (citing *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 227 (3d Cir. 1990); *see also Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 477 (D.N.J. 2009) (collecting authority).

10. Based on the foregoing, the court grants plaintiff's motion for partial summary judgment to the extent that the labeling and advertising at issue, linking DEHN-free 100+ Product and Helioplex®, is literally false and, therefore, violates section 43(a) of the Lanham Act and the Uniform Deceptive Trade Practices Act. At this juncture, the scope and duration of defendant's violation is unclear. The parties have not yet engaged in discovery. Although it appears as though defendant no longer manufactures DEHN-free 100+ Product, its violation may be ongoing insofar as such product remains on store shelves. Plaintiff indicates that it seeks injunctive relief, an order compelling defendant to publish corrective advertising or a press release, and attorney fees. Defendant understandably requests that the court defer consideration of these issues absent discovery and briefing.

IT IS FURTHER ORDERED that:

11. A telephonic scheduling conference to be initiated by plaintiff's counsel shall be held on Friday, **June 11, 2010**, at **9:00 a.m.** *See* D. Del. LR 16.1.

　　　　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　United States District Judge