IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


SCHERING-PLOUGH HEALTHCARE )
PRODUCTS, INC., )
  )
      Plaintiff, )
  )
      v. ) Civ. No. 09-642-SLR
  )
NEUTROGENA CORPORATION, )
  )
      Defendant. )


**MEMORANDUM ORDER**


At Wilmington this 7th day of June 2010, having reviewed defendant's motion for

reconsideration (D.I. 18);

IT IS ORDERED that, on or before **June 14, 2010**, defendant shall file a

submission not to exceed five (5) double-spaced pages,[1] addressing **only** the "other

evidence" it seeks to present to rebut the presumption of consumer deception, as

discussed below.

1. **Background**. This action was filed on August 27, 2009, alleging that

defendant has promulgated false advertising in violation of section 43(a) of the Lanham

Act, 15 U.S.C. § 1125, and the Uniform Deceptive Trade Practices Act, 6 Del. C. §

2351 et seq. (D.I. 1) The specific advertising at issue in this litigation concerns

---

[1]The page limit assumes compliance with LR 7.1.3(a)(2). The parties may attach
**relevant** documentary support as exhibits.

defendant's new "Ultra Sheer Dry-Touch Sunblock SPF 100+" sunscreen (hereinafter, the "100+ Product").  Plaintiff contends that advertising on the 100+ Product's packaging, as well as print advertising featuring the 100+ Product, falsely claim that the 100+ Product contains "Helioplex®" – a photostabilizing agent proprietary to defendant – when it does not.  The advertising at issue was discussed in the court's prior memorandum order.  (D.I. 17)  Shortly after the complaint in this action was filed, plaintiff filed a motion for partial summary judgment that the contested advertising is literally false.  Plaintiff adduced evidence that defendant represented to the court and to the public that Helioplex® is a proprietary blend of specific compounds:  avobenzone, diethylhexyl 2,6-naphthalate ("DEHN") and oxybenzone.  The contested advertisements prominently represent that the 100+ Product contains Helioplex®.  (*Id.*)

2.  Defendant did not contest that, for some period of time, DEHN was not present in the 100+ Product; octocrylene was used in place of DEHN.  Mindful that the sunblock-purchasing season was nearly (or already) underway, in lieu of a response, the court ordered defendant to respond to several direct questions relevant to the court's inquiry.  (D.I. 7)  Specifically, the court inquired whether (and when) DEHN was added to the 100+ Product and also inquired as to the total period of time DEHN was absent from the 100+ Product.[2]  (*Id.*)  In response, defendant indicated that:  (1) "Helioplex®" need not, by definition, contain DEHN; (2) DEHN was absent from the 100+ Product until February 2010; and (3) even should the court find literal falsity, plaintiff must also demonstrate "materiality, actual deception or a tendency to deceive,

---

[2]Plaintiff was given an opportunity to identify any opposition to defendant's representations and was also asked to clarify its damages position.  (D.I. 7)

and a likelihood of injury." (D.I. 9 at 6)  Defendant subsequently clarified that DEHN

has been added to the 100+ Product formulation; DEHN was absent from the 100+

Product "from April through August 2009, and in product shipped . . . through early April

2010;" and that it would be expected that these bottles "would be gradually sold off at

retail outlets over time." (D.I. 14)

4.  3. On May 18, 2010, the court granted partial summary judgment that the

challenged advertisements are literally false. (D.I. 17)  That is: (1) "[d]efendant

expressly defined Helioplex® to the consuming public;" (2) "[d]efendant's message was

unambiguous and explicit, insofar as it provided the public with a specific formula for

Helioplex®"; (3) "[d]efendant has not indicated that it subsequently provided the public a

contrary or expanded representation;" and (4) there "is no dispute that the 100+

Product, for a certain period of time, did not contain DEHN." (*Id.* at 6-7) (citations

omitted)  Defendant now moves for reconsideration on the basis that it was deprived of

the opportunity to present a full response to plaintiff's motion. (D.I. 18)

4. **Motion for reconsideration standard**.  Motions for reconsideration are the

"functional equivalent" of motions to alter or amend judgment under Federal Rule of

Civil Procedure 59(e). *See Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1352 (3d

Cir. 1990) (citing *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986)).

The standard for obtaining relief under Rule 59(e) is difficult to meet.  The purpose of a

motion for reconsideration is to "correct manifest errors of law or fact or to present

newly discovered evidence." *Max's Seafood Café ex-rel Lou-Ann, Inc. v. Quinteros*,

176 F.3d 669, 677 (3d Cir. 1999) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909

(3d Cir. 1985)). Therefore, a court may exercise its discretion to alter or amend its judgment if the movant demonstrates one of the following: (1) a change in the controlling law; (2) a need to correct a clear error of law or fact or to prevent manifest injustice; or (3) availability of new evidence not available when the judgment was granted. *See id.*

5. A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made. *See Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993). Motions for reargument or reconsideration may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990). Reargument, however, may be appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Id.* at 1241 (citations omitted); *see also* D. Del. LR 7.1.5.

6. **Discussion**. At this juncture the court reiterates its disagreement with defendant's argument that, even amidst a finding of **explicit** literal falsity, plaintiff must also demonstrate "materiality, actual deception or a tendency to deceive, and a likelihood of injury." (D.I. 9 at 6) The test for literal falsity is an objective one for the court's determination. "[O]nly an unambiguous message can be literally false[.]" *Novartis Consumer Health Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586-87 (3d Cir. 2002) (citation omitted). There are two different theories

of recovery for false advertising under section 43(a)[3]: "(1) an advertisement may be false on its face; or (2) the advertisement may be literally true, but given the merchandising context, it nevertheless is likely to mislead and confuse consumers."

*Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993).

> When a merchandising statement or representation is **literally** or **explicitly** false, the court may grant relief **without reference to the advertisement's impact on the buying public**. When the challenged advertisement is implicitly rather than explicitly false, its tendency to violate the Lanham Act by misleading, confusing or deceiving should be tested by public reaction.

*Id.* at 943 (quoting *Coca-Cola Co. v. Tropicana Prod., Inc.*, 690 F.2d 312, 317 (2d Cir. 1982)) (emphasis added). Put another way, "a plaintiff must prove either literal falsity or consumer confusion, but not both." *Id.* (citing *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 227 (3d Cir. 1990)). Where literal falsity is demonstrated, consumer confusion is presumed. *See Castrol*, 987 F.2d at 943 (citing *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 227 (3d Cir. 1990); *see also Novartis*, 290 F.3d at 586 ("If a plaintiff proves that the challenged commercial claims are literally false, a court may grant relief without considering whether the buying public was actually misled") (citation and internal quotation omitted); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 477 (D.N.J. 2009) (collecting authority).

---

[3]Section 43(a) of the Lanham Act provides that

> a person who shall . . . use in connection with any goods or services . . . any false description or representation, including words or other symbols tending falsely to describe or represent the same . . . shall be liable in a civil action by any person . . . who believes that he is or is likely to be damaged by the use of such false description or representation.

15 U.S.C. § 1125(a).

> What the cases mean when they say that proof of literal falsity allows the plaintiff to dispense with evidence that anyone was misled or likely to be misled is that the seller who places an undisputably false statement in his advertising or labeling probably did so for a malign purpose, namely to sell his product by lies, and if the statement is false probably at least some people were misled, and since it was a lie why waste time on consumer surveys?

*Schering-Plough Healthcare Prods., Inc.*, 586 F.3d 500, 512 (7th Cir. 2009); *see also*

*Cashmere & Camel Hair Mfrs. Institute v. Saks Fifth Ave.*, 284 F.3d 302, 315 (1st Cir.

2002) ("Common sense and practical experience tell us that we can presume, without

reservation, that consumers have been deceived when a defendant has explicitly

misrepresented a fact that relates to an inherent quality or characteristic of the article

sold.  To presume as much requires neither a leap of faith nor the creation of any new

legal principle.").

7.  Accordingly, the Third Circuit has stated that it is not an error to ignore

"superfluous evidence relating to the absence of consumer confusion" where literal

falsity is demonstrated.  *See Castrol*, 987 F.2d at 943.  Yet this is precisely the type of

rebuttal evidence defendant now suggests it must be afforded an opportunity to

present.  (D.I. 18 at 8-9)  If survey evidence was deemed relevant rebuttal evidence in

this context, plaintiff would be required to present its own surveys in response –

obliterating the purpose of the rule.

8.  Defendant's cited caselaw does not demonstrate that a plaintiff must do more

than present evidence that labeling or advertising is literally (and explicitly) false.  These

cases involve the second form of literal falsity described in *Castrol*, or **implicit** falsity.

For example, in *Schering-Plough*, the Seventh Circuit held that the labeling of a generic

drug (polyethylene glycol 3350, or "PEG") "Rx only" was not a "statement in the ordinary

sense" that could be attributed to all PEG products in the market.  586 F.3d at 513.

Defendants' drugs in that case were prescription drugs, so "Rx only" could not have

been literally false as to them.  *Id.* at 508.  It was unclear, however, how the "'Rx only'

representations on the containers [and on package inserts] are understood by

consumers and how a disclaimer should be worded to improve that understanding."  *Id.*

at 509.  Ultimately, the Court held that Schering "jumped the gun" by initiating a Lanham

Act claim prior to the FDA's resolution of a proceeding to determine whether the

defendants' drugs are misbranded since an over-the-counter PEG is now available.  *Id.*

at 505, 510.  Defendant's other cited case from this district, *Allen Organ Co. v. Galanti*

*Organ Builders Inc.*, 798 F. Supp. 1162, 1166 (E.D. Pa. 1992), *aff'd* 995 F.2d 215 (3d

Cir. 1993), did not involve explicitly false statements.  The *Allen* Court proceeded to

analyze consumer deception and materiality after it characterized the advertisements at

issue as potentially implicitly, rather than explicitly, false.  *Id.* at 1166  ("While none of

the ads . . . may have **specifically stated** that all 61 notes from the rank for each stop

were recorded and embodied in the organs, the terms such as 'every note,' 'all notes,'

and 'note-by-note' used in the advertising and other materials, at the very least,

**strongly imply** that 61 notes per stop were recorded for use in the Galanti electronic

organ.") (emphasis added) (holding that the materials would not have a tendency to

deceive or were not likely to influence purchasing decisions).

9. The foregoing does not preclude defendant from offering evidence tending to

rebut literal falsity itself.  *See, gen. Cashmere*, 284 F.3d at 315 ("Based on th[e]

presumption [of consumer deception], and defendants' failure to present evidence to

rebut it, Packard has satisfied its burden of demonstrating consumer deception on its cashmere content claim.").

10. In this regard, defendant argues that "Helioplex®" has also been defined to the public as "a breadth of stabilized sunscreen technologies that deliver superior UVA/UVB protection" without specific reference to DEHN. (D.I. 18 at 5-6, n.1) It is not clear that this specific advertisement was before the court prior to its grant of partial summary judgment. Insofar as the court's prior order limited defendant's response to plaintiff's motion, the court will allow defendant to put forward its evidence that its representations that the 100+ Product contained Helioplex® during the period at issue were not false on their face. Relevant documents may be attached as exhibits to defendant's submission.

IT IS FURTHER ORDERED that:

11. On or before **June 18, 2010**, plaintiff may respond to defendant's proffer in a submission not to exceed three (3) double-spaced pages, in which plaintiff shall identify any disputes it has over the evidence or representations presented.

12. The Rule 16 scheduling conference currently scheduled for Monday, **June 7, 2010**, at **10:00 a.m.** shall be postponed until further notice.

_____
United States District Judge