IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SCHERING-PLOUGH HEALTHCARE PRODUCTS, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 09-642-SLR |
| NEUTROGENA CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT NEUTROGENA'S RESPONSE TO THE COURT'S JUNE 7, 2010 ORDER**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant-Counterclaim Plaintiff Neutrogena Corporation*

*Of Counsel:*

Harold P. Weinberger
Jonathan M. Wagner
Jeremy A. Cohen
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
hweinberger@kramerlevin.com
jwagner@kramerlevin.com
jcohen@kramerlevin.com

Dated: June 14, 2010

{00415411;v1}

Neutrogena respectfully submits this response to the Court's June 7, 2010 Order. (D.I. 19). This response addresses Neutrogena's (i) "evidence that its representations that the [Ultra Sheer] 100+ Product contained Helioplex during the period at issue were not false on their face," (D.I. 19 at ¶ 10), and (ii) rebuttal to "the presumption of consumer deception" in the event the Court finds that Neutrogena's advertising for Ultra Sheer 100+ is literally false. (*Id.* at p. 1).

To establish Lanham Act liability on its summary judgment motion, Schering must show among other things that as a matter of undisputed fact Neutrogena's advertising was literally false and that consumers were deceived by any literally false claims. According to Schering, Neutrogena's ads stating that Ultra Sheer 100+ contains Helioplex are literally false because in other advertising for different Neutrogena products, Neutrogena had represented that Helioplex "consists of three (3) ingredients: 'Avobenzone,' 'Oxybenzone,' and 'Diethylhexyl 2,6-Naphthalate (DEHN),'" but Ultra Sheer 100+ does not contain DEHN. (D.I. 1 at ¶¶ 16, 22). Schering's position is thus premised on the proposition that consumers (i) saw the previous advertising for other Neutrogena products in which Helioplex was defined to include DEHN, (ii) then saw advertising stating that Ultra Sheer 100+ contained Helioplex (falsity), and (iii) concluded that Ultra Sheer 100+ therefore includes DEHN (deception).

However, the ads at issue do not say anything about either Ultra Sheer 100+ or Helioplex containing DEHN (*see* D.I. 1, Exhs. F and G) and, as Schering admits, the face of the Ultra Sheer 100+ label discloses that DEHN is not among the product's ingredients. (*Id.*, Exh. E). There is therefore an issue of fact as to whether the challenged Ultra Sheer 100+ advertising is literally false and, furthermore, even if it were, whether any consumers were deceived in light of the absence of any reference to DEHN in the ads at issue, as well as other information Neutrogena makes available to consumers. Moreover, the Court's conclusion that materiality is not a

required element of a Lanham Act claim when an ad is literally false is simply erroneous. Neutrogena believes that a consumer survey, which it is prepared to conduct promptly, will negate any claims of literal falsity or deception and demonstrate the absence of materiality.

1. Falsity. If an advertising claim alleged to be literally false is in fact ambiguous or susceptible to more than one meaning, the claim cannot be deemed false on its face. *Coors Brewing Co. v. Anheuser-Busch Cos., Inc.*, 802 F. Supp. 965, 969 (S.D.N.Y. 1992). *See also W.L. Gore & Assocs. v. Totes, Inc.*, 788 F. Supp. 800, 809 (D. Del. 1992) (because phrase used in defendant's advertising "is a relative term, a word meaning different things to different people," the claim in question "cannot be literally true or false"). Under settled Lanham Act authority, a consumer survey can be used to show that an advertisement alleged to be false on its face is in fact susceptible to multiple interpretations, thereby defeating a claim of literal falsity. *See L&F Products v. Procter & Gamble Co.*, 45 F.3d 709, 712-13 (2d Cir. 1995) (Plaintiff "has provided neither authority nor a persuasive argument that use of the consumer survey to sustain a finding that no literally false messages were imparted was error").

The Court predicated its literal falsity holding on the proposition that "Defendant expressly defined Helioplex to the consuming public" to include DEHN. (D.I. 17 at 6). That is incorrect. When Neutrogena aired the challenged ads, no consumer advertising mentioning Helioplex referenced DEHN. *See* Exh. A (2009 Neutrogena consumer advertising). The ad cited by the Court in support of its holding is directed to skin care professionals, not consumers.

Moreover, neither of the Ultra Sheer 100+ ads at issue states that Ultra Sheer 100+ or Helioplex contain DEHN. (D.I. 1, Exhs. F and G). The challenged ads state merely that "with an unbeatable PFA owed to [H]elioplex technology, nothing provides better UVA protection," which is consistent with Neutrogena's more recent advertising that Helioplex is a "breadth of

stabilized sunscreen technologies that deliver superior UVA/UVB protection from the sun." (Exh. B). Furthermore, other extrinsic information — in particular the Ultra Sheer 100+ product label itself, to which consumers obviously have access — discloses that at the time Ultra Sheer 100+ did not contain DEHN. (D.I. 1, Exh. E). *Cf. Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.*, 2010 WL 1348241, at *8 (D. Del. Apr. 6, 2010) ("The Havana Club label clearly and truthfully provides the origin of defendant's rum, and is not deceptive.").

In asserting that the challenged ads are false, Schering relies on information outside the four corners of the ads, drawn from non-consumer material, to assert that Helioplex must include DEHN. Schering has offered no support for the proposition that it may cobble together messages from extrinsic material to establish literal falsity – particularly when none of Neutrogena's contemporaneous consumer advertising mentioning Helioplex referenced DEHN. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 587 (3d Cir. 2002) ("The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion ... the less likely it is that a finding of literal falsity will be supported") (quotations omitted).

Schering has failed to meet its burden of demonstrating that the challenged ads contain an unambiguous literally false message because, at minimum, there is an ambiguity as to whether the challenged ads state anything about the specific photostabilizer used to achieve superior, long-lasting protection in Ultra Sheer 100+. To the extent the Court would shift the burden to Neutrogena to prove the absence of literal falsity, Neutrogena is prepared to do so by promptly conducting a consumer survey addressed to this issue, which it believes is likely to demonstrate that consumers do not perceive any literally false claims from the advertisements. *See L&F Products*, 45 F.3d at 712-13 (affirming use of survey to defeat claim of literal falsity).

2. <u>Deception</u>. If the Court nevertheless finds that Schering has established literal falsity and that consumer deception is presumed, Neutrogena would rebut that presumption with the same consumer survey evidence, which Neutrogena believes will show that consumers were not deceived by the challenged ads into believing that Ultra Sheer 100+ contains DEHN, particularly in light of the absence of any contemporaneous consumer advertising for Helioplex referencing DEHN. If consumers do not know that Helioplex was defined to include DEHN and simply expect, as the ads state, to get unmatched protection, then they cannot have been deceived. Neutrogena expects that a consumer survey will support this position.

3. <u>Materiality</u>. Finally, Neutrogena respectfully submits that the Court is wrong in holding that, if an advertising claim is literally false, the Lanham Act element of materiality may be dispensed with or presumed. (D.I. 19 ¶¶ 6-9). The excerpts from cases cited by the Court merely hold that when an ad is found to be literally false, consumer deception is presumed. Those very same cases make clear, however, that proof that a false statement is sufficiently material to influence purchasing decisions — not just that the message was received by consumers — is required if materiality is contested. For example, the Court in *CCMI v. Saks Fifth Avenue*, 284 F.3d 302, 312 n.10 (1st Cir. 2002) (D.I. 19 ¶ 6) held that "even when a statement is literally false or has been made with the intent to deceive, materiality must be demonstrated in order to show that the misrepresentation had some influence on consumers." *See also Filtration Solutions Worldwide, Inc. v. Gulf Coast Filters, Inc.*, No. 08-0102-CV-W-FJG, 2010 U.S. Dist. LEXIS 2130, at *61 (W.D. Mo. Jan. 12, 2010) ("Even where literal falsity is shown, materiality is not presumed"). *Castrol Inc. v. Pennzoil Co.*, 987 F. 2d 939, 945 n.6 (3d Cir. 1993), the principal case cited by the Court (D.I. 19 ¶ 6) effectively noted that materiality is a Lanham Act requirement even when an ad is found to be literally false,

but observed that the Court did not have to address materiality only because the defendant "never argued that the claims were 'immaterial' in the sense of being false but innocuous." *Sandoz Pharmaceuticals Corp. v. Richardson Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990) (D.I. 19 ¶ 9), similarly held that materiality is a necessary element of a Lanham Act claim.

Here, materiality is a disputed factual issue. The substitution of one photostabilizer, octocrylene, for another, DEHN, is the type of hyper-technical scientific matter that courts have found "are often irrelevant to consumer expectations" in Lanham Act false advertising cases. *W.L. Gore & Assoc's., Inc. v. Totes Inc.*, 788 F. Supp. 800, 807 (D. Del. 1992). Consumers received exactly what they intended to purchase, an SPF 100+ sunscreen that provides extremely high, photostable UVA/UVB protection. Accordingly, Neutrogena should be permitted to conduct a consumer survey to show that any alleged literally false claims in its ads are immaterial. *See Highmark Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001) (holding ad to be literally false and going on to state, with respect to the required element of materiality, that "'consumer survey evidence is extremely helpful in determining whether an allegedly false statement is material'") (citation omitted).

ASHBY & GEDDES

/s/ *John G. Day*

*Of Counsel:*

Harold P. Weinberger
Jonathan M. Wagner
Jeremy A. Cohen
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
hweinberger@kramerlevin.com
jwagner@kramerlevin.com
jcohen@kramerlevin.com

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant-Counterclaim Plaintiff Neutrogena Corporation*

Dated: June 14, 2010