IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCHERING-PLOUGH HEALTHCARE PRODUCTS, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civ. No. 09-642-SLR ) |
| NEUTROGENA CORPORATION, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM ORDER**

At Wilmington this 8th day of June 2011, having reviewed plaintiff's motion for a permanent injunction;

IT IS ORDERED that said motion (D.I. 42) is denied, as follows:

1. **Background.** On August 27, 2009, plaintiff brought claims for false advertising in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125, and the Uniform Deceptive Trade Practices Act, 6 Del. C. § 2351 et seq. (D.I. 1) The specific advertising at issue in this litigation concerns defendant's "Ultra Sheer Dry-Touch Sunblock SPF 100+" sunscreen (hereinafter, the "100+ Product"). Plaintiff contended that advertising on the 100+ Product's packaging, as well as print advertising featuring the 100+ Product, falsely claimed that the 100+ Product contains "helioplex®" – a photostabilizing agent proprietary to defendant – when it did not. The advertising at issue was detailed in the court's prior memorandum order. (D.I. 17)

2. Shortly after the complaint in this action was filed, plaintiff filed a motion for partial summary judgment that the contested advertising is literally false. Plaintiff adduced evidence that helioplex® was defined to the public as a proprietary blend of specific compounds: avobenzone, diethylhexyl 2,6-naphthalate ("DEHN") and oxybenzone. The contested advertisements prominently represented that the 100+ Product contains helioplex®. Defendant did not contest that, for some period of time, DEHN was not present in the 100+ Product; octocrylene was used in its place.

3. Mindful that the 2010 sunblock-purchasing season was nearly (or already) underway, in lieu of a response, the court ordered defendant to respond to several direct questions relevant to the court's inquiry: whether (and when) DEHN was added to the 100+ Product; and (2) the total period of time DEHN was absent from the 100+ Product.[1] (D.I. 7) While it was defendant's position that "helioplex®" need not, by definition, contain DEHN, defendant clarified that DEHN was absent from the 100+ Product "from April through August 2009, and in product shipped . . . through early April 2010;" and that it would be expected that these bottles "would be gradually sold off at retail outlets over time." (D.I. 14)

4. On May 18, 2010, the court granted partial summary judgment that the challenged advertisements were literally false. (D.I. 17) That is: (1) "[d]efendant expressly defined helioplex® to the consuming public;" (2) "[d]efendant's message was unambiguous and explicit, insofar as it provided the public with a specific formula for helioplex®;" (3) "[d]efendant has not indicated that it subsequently provided the public a

---

[1] Plaintiff was given an opportunity to identify any opposition to defendant's representations and was also asked to clarify its damages position. (D.I. 7)

2

contrary or expanded representation;" and (4) there "is no dispute that the 100+ Product, for a certain period of time, did not contain DEHN." (*Id.* at 6-7) (citations omitted)

5. Defendant moved for reconsideration, which motion was denied on July 15, 2010. On subsquent letter submissions to the court, the court denied plaintiff's request for a permanent injunction. (D.I. 27) Specifically, the court disagreed with plaintiff's assertion that the court's finding of liability on defendant's part automatically entitled it to injunctive relief. (*Id.* at 2-4) The parties were permitted to proceed with limited discovery addressed to the four permanent injunction factors (discussed below), and plaintiff subsequently filed the motion at bar on February 4, 2011.

6. **Permanent injunction standard.** The Lanham Act grants a court the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). A permanent injunction is appropriate under the Lanham Act when plaintiff has shown: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (hereinafter "*eBay*"). "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that discretion must be exercised

consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id.* at 1841.

7. **Discussion**. The court first addresses plaintiff's argument that a presumption of irreparable harm is appropriate.[2] There is no clear indication that this presumption still applies in the wake of *eBay*. *See, e.g., Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1320 (11th Cir. 2010) (noting and declining to decide the issue). As such, the court declines to forego the traditional four-factor analysis and does not shift the burden of proof on the issue to defendant.

8. Plaintiff frames its arguments in the language of cases applying a presumption of irreparable harm. As a result of defendant's false advertising, plaintiff argues that it suffers loss of goodwill, reputation and "equity," along with lost sales. Plaintiff's primary arguments in support are that: (1) defendant is plaintiff's direct competitor; and (2) defendant compares its products to plaintiff's products in its advertisements.[3] (D.I. 43 at 8, 13-15) What the court deemed to be false advertising in its prior opinion was defendant's association of the "helioplex®" mark with the 100+ Product during the period of time the 100+ Product did not contain DEHN. To this end, the bottle labeling of DEHN-free 100+ Product (D.I. 5, ex. G), television advertisement

---

[2]The court addressed plaintiff's argument in its prior opinion, holding that the *eBay* factors could not be supplanted by such a presumption. (D.I. 27) Plaintiff raises the issue again here.

[3]Courts applying a presumption of irreparable harm have done so where defendant's advertisements were: (1) literally false; and (2) comparative. *See, e.g., Fortunet, Inc. v. Gametech Arizona Corp.*, Civ. No. 06-393, 2008 WL 5083812, *7-8 (D. Nev. Nov. 26, 2008) (citations omitted); *see also* McCarthy on Trademarks § 27:37 (2011).

4

touting that defendant created 100+ Product "with helioplex®" (*id.*, ex. A), and print advertisement for 100+ Product "with helioplex®" (*id.*, ex. B) (hereinafter, the "print ad") are all literally false. (D.I. 17) The print ad also features a combined UVA/UVB comparison chart depicting the 100+ Product as exceeding two Coppertone®-branded sunscreens (SPF 50 and SPF 30). The helioplex® logo is prominently featured on the chart and throughout the advertisement. (D.I. 5, ex. B) Thus, there is one literally false advertisement that also makes a comparative claim, although the falsity (association of 100+ Product with helioplex®) is not in the comparison itself.

9. Ms. Tayna Berman ("Berman"), plaintiff's 30(b)(6) designee on the understanding of "helioplex®" amongst consumers, testified that defendant's false advertising regarding helioplex® in the 100+ Product "harms the consumer's perception of the Coppertone® brand in comparison." (D.I. 49, ex. D at 8) Plaintiff does not describe with any particularity lost sales, lost customers, or lost business opportunities. Berman testified that plaintiff conducted no investigation to determine the impact (if any) of defendant's false advertising on plaintiff's reputation or its consumer base. (D.I. 49, ex. D at 9, 59, 124)

10. With respect to the availability of money damages as a remedy, Berman testified that while plaintiff has "seen sales decrease," she does not know a way to determine a direct correlation with the specific advertising the court found to be false. (*Id.* at 15 (citing D.I. 49, ex. D at 23-25)) As defendant points out, however, Berman also testified that plaintiff has never tried to measure its economic loss. (D.I. 49, ex. D at 99, 122) The harm, according to Berman, is an unquantifiable "economic impact to the brand." (*Id.* at 24)

11. It was unclear at the time of the court's summary judgment opinion in May 2010 whether DEHN-free 100+ Product remained on store shelves. (D.I. 17 at 7) A year later, it remains unclear how much, if any, DEHN-free 100+ Product remains for sale. Certainly, plaintiff has not attempted to quantify the amount.[4] (D.I. 43 at 17)

12. Plaintiff reemphasizes its loss of "goodwill" in the context of the balance of hardships factor. (D.I. 43 at 8, 18) The scope of plaintiff's proposed injunction is broad: plaintiff proposes an injunction on **all** future use of the helioplex® mark in DEHN-free products. (D.I. 43, proposed order) Defendant stresses that such a broad mandate prohibits it from redefining (or further developing) its helioplex® mark. As a prime example, defendant links its product webpage for the 100+ Product to a tutorial on helioplex® which states as follows:

> Avobenzone is one of the best UVA blockers approved by the FDA, but it is highly unstable when exposed to sunlight. Neutrogena was the first in the U.S. market to introduce sun protection in which avobenzone was stabilized using oxybenzone and DEHN, effectively providing better, longer protection from harmful UVA rays. This breakthrough technology was called helioplex®. With time, and as science has progressed, the helioplex® name has come to encompass additional technologies and ingredients beyond DEHN but which still provide the same benefits of stabilized sun protection.
>
> Today helioplex® represents a breadth of stabilized sunscreen technologies that deliver superior protection from the sun. When you choose a sunblock with the name helioplex®, you can be certain that you are using one that was specifically engineered to deliver superior UV protection that is broad spectrum and photostable.

---

[4]Without making a specific factual finding in this regard, the could would suspect that sunblock manufactured in late 2009 and early 2010 would have an expiration date that has either expired or that is fast approaching expiration at this point.

6

(D.I. 49, exs. E, F)[5] As testified to by defendant's General Manager Susan Sweet, the injunction sought by plaintiff would "constrain [defendant's] use of [its] own trademark." (*Id.*, ex. B at 97) A trademark holder is permitted certain latitude with respect to formula changes of products bearing the mark. *See, e.g., Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (affirming district court's holding that trademark holder did not abandon mark used for its dietary supplement when it changed formulas and the change maintained the desired level of enzymatic activity per milligram); *Alexandria Coca-Cola Bottling Co., Ltd. v. Coca-Cola Co.*, 637 F. Supp. 1220, 1229 (D.Del. 1984) (use of Coca-Cola trademark not disturbed by formula changes that were responsive to FDA laws or that were "evolutionary improvements").

13. The public interest is generally served by preventing consumer deception or confusion caused by literally false advertisements. *See, e.g., POM Wonderful LLC v. Purely Juice, Inc.*, Civ. No. 07-02633, 2008 WL 4222045, *16 (C.D. Cal. July 17, 2008) (collecting cases).

14. On balance, the court finds that plaintiff's proposed injunctive relief is not warranted. Plaintiff has not articulated any particular injuries as a result of defendant's false advertisements, let alone irreparable injury. Even were the court to assume a generalized injury to plaintiff's goodwill during the period of literal falsity, plaintiff adduces only conclusory allegations that money damages are incalculable and, therefore, inadequate to compensate any injuries it may have. Plaintiff has not attempted to

---

[5]Plaintiff objects to several of defendant's exhibits as not produced to it during discovery. These particular exhibits bear a website address and date stamp (February 9, 2011) and appear to be publicly available documents.

quantify its loss. (D.I. 49, ex. D at 99, 122) Defendant has iterated a strong interest in allowing it full enjoyment of its helioplex® mark under the trademark laws (to the extent permissible by law). While the public interest favors enjoining literally false advertising, the public is not currently being deceived. There is no indication that defendant continues to use the print ad[6] or that 100+ Product (manufactured between April and August 2009) falsely bearing the "helioplex®" mark remain for sale, and the 100+ Product now contains DEHN.[7]

15. Finally, with respect to the scope of the injunction, the court agrees with defendant that plaintiff's proposed injunction is too broad, because it: (1) is not limited to the specific advertisements at issue in this litigation; but (2) purports to enjoin any future use of the helioplex® mark in connection with any product not containing DEHN. The present litigation concerned specific advertisements and a specific product – the 100+ Product. It is not clear that defendant is precluded from developing its helioplex® mark in connection with other photostabilizing technologies, and declines to impede its trademark rights in the manner suggested by plaintiff.

---

[6]Defendant states that the advertisements are discontinued. (D.I. 48 at 8) Plaintiff does not refute this in its reply papers. (D.I. 52)

[7]For these same reasons, the court disagrees with plaintiff's argument that there is a risk of multiple further lawsuits absent an injunction under the unique circumstances presented in this case. (D.I. 43 at 16) (arguing that defendant "will be free to repeat its literally false statements this year, and next year, and the next")

16. **Conclusion**. For the foregoing reasons, plaintiff's motion for a permanent injunction (D.I. 42) is denied.

IT IS FURTHER ORDERED that, on or before **Friday, June 17, 2011**, the parties may submit letters to the court[8] articulating whether any additional issues need be resolved prior to the termination of this litigation.

_____
United States District Judge

---

[8]Not to exceed two, single-spaced pages in 12-point font.